**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


CARL HOLLOWAY,

                Petitioner,                     Case Number: 2:06-CV-10700

v.                                    HONORABLE PAUL D. BORMAN

HELEN J. MARBERRY,

                Respondent.

                                           /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Carl Holloway, who is incarcerated at Federal Correctional Institution in

Milan, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner challenges the Federal Bureau of Prisons' [BOP] decision to deny him early release

benefits under 18 U.S.C. §3621(e), based upon his conviction for being a felon in possession of a

firearm.  For the reasons set forth below, the Court denies the petition.

**I.**

Petitioner was convicted in the United States District Court for the Central District of

Illinois of being a felon in possession of a firearm.  On January 19, 2005, he was sentenced to

51-months imprisonment and three years supervised release.  This supervised release was

ordered to be served consecutively to another term of supervised release imposed on the same

date.

Petitioner is currently on the waiting list for participation in the BOP's Residential Drug

Abuse Program (RDAP).  The BOP has discretion to reduce an inmate's sentence by up to one

year if the inmate was convicted of a qualifying offense and successfully competes RDAP.  18

U.S.C. § 3621(e)(2)(B).  On March 28, 2005, Petitioner was notified that he was eligible to participate in RDAP, but would not be considered for the early release benefit because of his felon-in-possession conviction.

In April 2005, Petitioner filed an administrative remedy request with the warden at the Federal Correctional Institution in Oxford, Wisconsin, where he was incarcerated at the time. Petitioner argued that his offense was not a "crime of violence" precluding early release consideration.  The warden denied Petitioner's request for relief on the ground that Program Statement 5162.04 identifies felon in possession as an offense that, at the director's discretion, precludes early release.  See Response to Request for Administrative Remedy, dated 4/22/05, attached as Ex. 5 to Respondent's Answer.

Petitioner appealed the warden's decision to the North Central Regional Office and the National Inmate Appeals Administrator.  Both appeals were denied on the ground that a felon-in-possession conviction, at the director's discretion, precludes early release.  See Regional Administrative Remedy Appeal Response, 5/11/05, attached as Ex. 6 to Respondent's Answer; Central Office Administrative Remedy Appeal, 8/3/05, attached as Ex. 7 to Respondent's Answer.

Petitioner filed another request for administrative remedy in May 2005, arguing that 28 C.F.R. § 550.58 and Program Statement 5162.04 violate the Administrative Procedures Act (APA).  The warden denied the request and again stated that the felon-in-possession conviction precluded early release.  See Amended Response to Request for Administrative Remedy, 7/20/05, attached as Ex. 8 to Respondent's Answer.

Petitioner appealed the warden's decision to the North Central Regional Office and the

National Inmate Appeals Administrator. Both appeals were denied on the ground that the regulation was promulgated in accordance with the APA. See Regional Administrative Remedy Appeal Response, 7/12/05; Central Office Administrative Remedy Response, 9/23/05, attached as Exs. 9 & 10 to Respondent's Answer.

Petitioner then filed the pending petition for a writ of habeas corpus arguing that Program Statement 5162 is invalid because it was not promulgated in compliance with the notice and comment procedures of the Administrative Procedures Act, and it, therefore, should not be applied to deny him eligibility for early release consideration under § 3621(e)(2)(B).

## II.

At issue in this case is whether the BOP's program statement interpreting § 3621(e), and operating to exclude Petitioner from consideration for early release, is invalid because it was not promulgated in accordance with the Administrative Procedures Act.

On September 13, 1994, Congress passed the Violent Crime Control and Law Enforcement Act, which, *inter alia*, directed the Bureau to "make available appropriate substance abuse treatment for each prisoner the [Bureau] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Congress also provided for a concomitant potential for sentence reduction as follows: "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [Bureau], but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

To determine which inmates would be eligible for participation in the drug treatment program and which inmates would be eligible to be considered for sentence reduction upon

successful completion of the program, the BOP promulgated certain regulations and program statements defining inmates' eligibility. The Act did not define "nonviolent offense." Thus, among the first regulations enacted by the BOP was Regulation 550.58, which defined "nonviolent offense" as any offense that is not a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3). The BOP also issued Program Statement 5162.02 which excluded from consideration for early release any prisoner whose sentence included an enhancement for possession of a firearm.

Following promulgation of the BOP's regulations and statements governing the administration of § 3621(e)(2)(B), numerous prisoners successfully challenged the BOP's reliance on sentence enhancements for possession of a firearm in categorically excluding prisoners from consideration for early release. Courts holding this categorical exclusion to be improper did so based on the plain language of § 3621(e)(2)(B). The statute permits a sentence reduction for prisoners "convicted of a nonviolent offense." Thus, the BOP's reliance of sentence *enhancements*, rather than convictions, to determine eligibility for early release conflicted with the plain language of the statute. *See, e.g.*, Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998); Scroger v. Booker, 39 F. Supp. 2d 1296 (D. Kan. 1999); Samples v. Scibana, 74 F. Supp. 2d 702 (E.D. Mich. 1999). Other courts held that a sentence enhancement for felon in possession could not properly be categorized as a nonviolent offense. *See, e.g.*, Byrd v. Hasty, 142 F.3d 1395, 1397 (11th Cir. 1998).

In response to the successful challenges to its definition of nonviolent offenses, the BOP amended 28 C.F.R. § 550.58, and issued the following interim regulation:

> An inmate who was sentenced to a term of imprisonment . . . for a nonviolent offense, and who is determined to have a substance abuse problem and

successfully completes a residential drug abuse treatment program during his or
her current commitment may be eligible, in accordance with paragraph (a) of this
section, for early release by a period not to exceed 12 months.

(a) Additional early release criteria.

(1) As an exercise of the discretion vested in the Director of the Federal Bureau of
Prisons, the following categories of inmates are not eligible for early release:

        . . . .

(vi) Inmates whose current offense is a felony:

        (A) That has as an element, the actual, attempted or threatened use
        of physical force against the person or property of another, or

        (B) That involved the carrying, possession, or use of a firearm or other
        dangerous weapon or explosives (including any explosive material or
        explosive device), or

        (C) That by its nature or conduct, presents a serious potential risk
        of physical force against the person or property of another . . . .

28 C.F.R. § 550.58. The effective date of this interim regulation was October 9, 1997. It was

published in the Federal Register on October 15, 1997 and comments were sought until

December 15, 1997. 62 Fed. Reg. 53691 (Oct. 15, 1997).

The BOP also issued a new program statement, 5162.04, which became effective on

October 9, 1997. Program Statement 5162.04 states, in pertinent part:

As an exercise of the discretion vested in the Director, an inmate serving a
sentence for an offense that falls under the provisions described below shall be
precluded from receiving certain Bureau program benefits.

Inmates whose current offense is a felony that:
        . . . .

        [I]nvolved the carrying, possession, or use of a firearm or other
        dangerous weapon or explosives . . .

Program Statement 5162.04 at ¶ 7.

On December 22, 2000, the interim regulation was adopted as a final regulation without

any changes.  *See* 65 Fed. Reg. 80748 (Dec. 22, 2000).

Petitioner argues that the 1997 Program Statement 5162.04 may not be used to deny him

early release under § 3621(e)(2)(B) because it was not properly promulgated pursuant to the

APA standards.

Under the APA, Administrative agencies are required to provide for a notice and

comment period before promulgating a rule.  5 U.S.C. § 553(b).  In addition, publication of a

substantive rule must be made no less than thirty days before its effective date.  5 U.S.C. §

553(d).  However, "interpretative rules, general statements of policy, or rules of agency

organization, procedure, or practice" are exempted from the notice and comment procedures.

Id.  "For purposes of the APA, substantive rules are rules that create law, while in contrast,

interpretive rules merely clarify or explain existing law or regulations and go to what the

administrative officer thinks the statute or regulation means."  *Dismas Charities, Inc. v. United*

*States Department of Justice, Fed. Bureau of Prisons*, 401 F.3d 66, 679 (6th Cir. 2005) (internal

quotation omitted).  The Sixth Circuit further explained this distinction as follows:

> The distinction reflects the primary purpose of Congress in imposing notice and
> comment requirements for rulemaking – to get public input so as to get the wisest
> rules.  That purpose is not served when the agency's inquiry or determination is
> not "what is the wisest rule," but "what is the rule."  The interpretative rule
> exception reflects the idea that public input will not help an agency make the legal
> determination of what the law already is.
>
> * * *
>
> It is true that once an agency gives a regulation an interpretation, notice and
> comment will often be required before the interpretation of that regulation can be
> changed.  *See Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir.2001);
> *Alaska Prof'l Hunters Ass'n v. Fed. Aviation Adm'n*, 177 F.3d 1030, 1033-34
> (D.C.Cir.1999).  This is because once an agency has promulgated its own

regulation, a change in the interpretation of that regulation is likely to reflect the agency's reassessment of wise policy rather than a reassessment of what the agency itself originally meant. The determination of wise policy – unlike legal interpretation – is the kind of determination for which notice and comment procedures are particularly appropriate. However, when an agency is changing its interpretation of a statute, it is much more likely that the agency is not trying to determine what is the wiser rule, but rather what is the rule.

*Id.* at 680, 682. BOP Program Statements are "internal agency guideline[s] . . . akin to an interpretive rule that do[es] not require notice and comment." *Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal quotation omitted).

Program Statement 5162.04 mirrors the substance of the rules set out in § 550.58, providing internal guidelines for the implementation of § 550.58 and § 3621(e) by the BOP. As explained in an opinion by another Judge in this District:

The program statement and the 1997 interim regulation shifted the BOP's attention from the statutory meaning of "nonviolent offense" to interpreting the extent of the BOP's discretionary authority under the statute. The program statement clarifies the existing statute and explains what the BOP thinks the statute means. It does not change the interpretation of the regulation, and it does not make law; rather, it says what the law is.

*Chevrier v. Marberry*, No. 04-10239, 2006 WL 3759909, *8 (E.D. Mich. Dec. 20, 2006) (Lawson, J.).

Because Program Statement 5162.04 clarifies the existing statute and does not change the interpretation of the regulation, the Court concludes it is an interpretive rule that is exempt from the notice and comment requirements of the APA. *Accord Chevrier,* 2006 WL at *8; *Gunderson v. Hood*, 268 F.3d 1149, 1154-55 (9th Cir.2001); *Walther v. Bauknecht*, 155 Fed. Appx. 463, 466 (11th Cir. November 21, 2005); *Kiner v. Holinka*, No. 06-498, 2007 WL 1079997, *7 (D. Minn. April 09, 2007). Therefore, its application to Petitioner was not improper.

**III.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is denied and the matter is **DISMISSED WITH PREJUDICE**.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 30, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on petitioner and the attorneys of record by electronic means or
U.S. Mail on July 30, 2007.


s/Denise Goodine
Case Manager